May it please the Court, my name is Jerry Sale. I'm here on behalf of Progressive American Preferred Insurance Company. I would like to reserve five minutes for rebuttal, please. The question presented in this case is whether the UIM anti-stacking language in the policies is ambiguous and therefore would be construed not to allow would be construed to allow stacking as opposed to the language of the policies. The policies have identical anti-stacking language. I presented to the Court a booklet of materials that I want to make reference to, and the language is the first language in that. Now, you rely on Parker, correct? Correct. And the appellees rely primarily on Hahn and Johnson? That's correct. And I think that the Court relied on Hahn and Johnson to some extent, obviously, correct? The Court did, yes, that's correct. So the language of other applicable underinsured motorist coverage was found ambiguous in Hahn and Johnson. Why aren't those cases controlling? And why is Parker what we should follow? Certainly. Could I, I'll go immediately to your question. I just want to set a little groundwork and then I'll go immediately to it. Sure. There are two ways to approach this case, and I wanted to address both of them. Okay. One of those cases has to do with whether or not there are separate insurers, because if there are separate insurers and the policy cannot, policies cannot be read otherwise, we don't actually reach the issue you just asked me about. If, on the other hand, it's considered to be one insurer, then we reach that argument. Is that the total universe? What about in the middle, separate insurances with confusingly similar names? I think that goes to the first argument. The question is, are there separate insurers? And if they have the same name, progressive, in there, does that allow an insured to misread the policy to believe that there's only one insurer? That's the same question. Well, or to state it otherwise, does it make it ambiguous? I understand that's the argument. And I do want to address that. I was going to take it in the reverse order, but I have a question. That seems to be the argument the district court bought, right? I think so, yes. Completely mistakenly, I would suggest. Should I address Judge Callahan's question first? Just go ahead, the way you were doing it. Just, you can make your argument. We've told you what our concerns are, so just incorporate those. I have both those concerns, and I do want to reach both of those. In regard to the first question, are there separate insurance companies? And I'll take that question first. The opposing side concedes that if there are other insurance companies, then there's no ambiguity in that provision. But they argue it is ambiguous based upon essentially the idea that progressive is in large print, and you have to look beyond that to find what the company is. And they say, therefore, it cannot be understood by an insurer. Now, of course, we're dealing with the legal fiction here, as we know. This is no one reads their insurance policy, and I don't suggest that any insurer would look at this and know who their insurer was exactly. But the question here is, if you read the insurance policy, if you take a look at the terms of the insurance policy, does it tell you who the company is? And it absolutely does that. If you take a look at the policy, it tells you on the declarations page, this is the second page of this, DR 13. It tells you what's listed on the declarations page, and the very last thing is, it tells you the company providing the insurance. One of the things that is talked about here is under the definition of we, us, and our, what does that mean? And it says the company that is on the declarations page. Now, if we look at the two declarations pages, we see, and I've got this highlighted, we see the progressive preferred is listed on one, progressive preferred insurance company, and on the other, progressive American insurance company. Now, it's true that there's a very large heading that says progressive. But I don't suggest that if what you're looking for, in fact, I suggest the opposite. If what you're looking for is what the company's name is, you're not allowed to read out of the policy what the policy says. This policy uses the word company in only two places on this deck page, and it's where it says progressive. Sorry, one place for each policy. It's where it says progressive preferred insurance company, and where it says progressive American insurance company. You would look in vain if you were looking for any other mention of the word company. If an insured is looking at that page to determine what the name of the insurance company is, they cannot ignore the language that says progressive American insurance company, for an example. That would violate, I think, any construction, even including a common sense instruction, that you have to give effect to the language that's there. You cannot ignore that it says that. What does that mean if it doesn't mean that's the company? The progressive up above is easily understood by any insured to refer generally to the constellation of companies that are progressive. But if you're looking for the company which issues the insurance, you have to read what it says, and it says progressive American insurance company. And it says progressive preferred insurance company. Small letters, and as I say, I don't expect anyone knows or cares until the accident has happened, when they go back to it. But at that point, they have to read the policy. They are duty-bound to read the policy, and that's what this policy says. If that's the case, if there are two separate insurance companies, the other side concedes the anti-stacking clause is not ambiguous. We don't have a problem with it, and we win on that basis, and the Court erred on that basis. Then there's the second one. Even if what's obvious is made not obvious somehow, and there is only one insurance company in regard to this, then the question is, is the anti-stacking clause ambiguous in that sense? And by its language, it clearly is not. Now, let me refer to the Parker case and the Hawn and Johnson cases particularly, because that was the question. In the Hawn and Johnson cases, there were distinctions made in the policies between insurance provided by us and insurance from other sources. And it's because of that particular language, the insurance provided by us, in distinction from other sources, that the Court said an insured would understand when we say we and our and so on in the policy, that we're talking about insurance provided by us. What Parker pointed out is that language was not in the USAA policies. The USAA policies did not have any sort of language drawing a distinction between policies provided by us and other sources. And they also pointed out in the Parker policy that the proration clause, which confuses we and our and so on, those terms, does not make that anti-stacking clause confusing for that reason alone. And that's actually another case, the California case, Wagner, which makes that case even further clear. So if we take a look just at the anti-stacking language of the policy, which is here, there is nothing ambiguous about that language. It starts out, it says, if there is other applicable underinsured motorist coverage. Other applicable underinsured motorist coverage makes no reference to how many insurers are involved. It simply says other applicable underinsured motorist coverage. Any reasonable person reading that would understand that we're looking for another policy that has that coverage in it. Now, the other side complains that we use the word coverage rather than policy, and policy wouldn't have been a bad term to use. But I note that the statute uses the term insurance, other similar insurance. And I would say that other applicable underinsured motorist coverage is even clearer than the statute is. There are different ways it can be said, and there's no ambiguity in that. The next says, the total amount of underinsured benefits recoverable from all sources. Now, it doesn't just say all sources. It says underinsured benefits recoverable from all sources. That means other underinsured motorist coverages, because that's where you get those benefits. There's nothing confusing about that. It has nothing to do with how many insurers are involved. It simply ----   benefits recoverable from all sources or other sources? Well, the significance is this. In the policies where it said other sources, you were doing a comparison of other sources with something else, and the something else was policies issued by us. That was the point of Hahn and Johnson. That's not a point here. That juxtaposition is never there. It's never other compared with us. In this case, that language doesn't appear. And that's the same situation that was in Parker v. USSA, USAA. That's the same situation there, and that Court pointed out very clearly. So if it had said other sources, it would track the language more of Hahn and Johnson, but you're saying because it says all sources, it tracks the language of Parker better? Is that what ---- Not quite. Similarly. Okay. The other sources all by itself isn't that significant. It's other ---- what does other mean? What are you comparing the other to? And in Hahn and Johnson, the other was policies issued by us. So when you said policies issued by us, and then you have the word other, then you're  of policies that are not issued by us. In our policy, we don't have other, so you don't make that comparison. But even if you did have the other, in this case, there's no reference in the policy to policies issued by us. So you don't have that juxtaposition. You don't have that contrast, which loads the word other to compare with policies issued by us. So all we have here, and all contributes to that as well. I mean, all is a different term from other. But all we have here is the unambiguous phrase, underinsured benefits recoverable from all sources. Not a problem with that. Reasonable insured can read that. We're talking about whatever other sources that they're recoverable from, from all sources. And then finally, the language says, the total amount recoverable shall not exceed the amount provided by the one policy with the highest limit of liability. And that's construed to be ambiguous, or the court thought that there was some ambiguity in regard to that, because it said the one policy with the highest limit, as opposed to any one policy with the highest limit. So the court and opposing counsel would have us believe that if we have a situation where you have two policies and one is 300 limits and one is 200 limits, this is fine. It applies. They only get 300. But if you have two policies and one is 250 and the other is 250, then all of a sudden it becomes ambiguous and they get 500. I don't think that's a reasonable reading of this. I think that defeats the language that says, be one policy. It says one policy. That would provide you only the one limit. I would note also, if you take a look at the statute, which is on this page, that the language is very similar in the statute, and there's no consideration of ambiguity in regard to that. It's simply not ambiguous. And I would point out that there's also a tension with the word higher or highest. The word higher in the statute supposedly posits the idea that you only have two, whereas you can have more than two. The word highest seems to posit the idea that you have more than two, but it can also apply to two. I don't think that creates an ambiguity. What we're looking for is a simple statement that insurers can read, and I think when you're talking about the one policy having the highest limits, there is no ambiguity in regard to that. There is nothing ambiguous about this provision. To go on, although I've mentioned it already, to go on and repeat it again, the You don't then look to the we and our language in the proration clause and say, now that's made this anti-stacking clause ambiguous. That issue was addressed in Parker and resolved in Parker. It doesn't make it ambiguous. Proration has nothing to do with this anti-stacking. Proration is where you go once you have two insurance companies which do not stack. Then that determines how between them the proceeds are paid. I have a procedural question in terms of if we agree, if we were to come to the conclusion that the district court erred, do we just reverse the district court or do we direct the district court to enter judgment in your favor? Thank you for that question. I noticed that our brief just said reversed, and in fact, there are cross motions for summary judgment. The facts are undisputed. It's a pure issue of law. And if it's reversed, it's only a mirror image. There aren't more than two positions. I noticed that difference of language, and so I wasn't sure. It would be remanded with instructions to enter judgment in favor of. Since you had cross motions, one or the other of you wins, depending on what the interpretation is of the language. That's correct, Your Honor. Unless there are any more questions, I have nothing more to address on those two points. They don't appear to be, so you can reserve the balance of your time for rebuttal. Thank you. May it please Your Honor, it's Lawrence Wagner, appearing for the police. If you can keep your voice up, that would help. I always have difficulty with that. The first ambiguity, I think the policy has several ambiguities. The ambiguities are not really as complicated, I don't believe, as appellants would posit them. Actually, the first ambiguity is what is the company providing the insurance? The policy defines we as the company providing the insurance, as shown on the declaration page. If you go to the declaration page in the upper right-hand corner, in very bold print, large print, it's progressive. And then further down is progressive preferred insurance company or progressive American insurance company. Nowhere does it say the company providing this insurance is progressive preferred insurance company, progressive American insurance company on the declarations. It just has different names, progressive. And progressive appears in several different places on the declarations page. We would submit that the only way, reasonable way to read that is that progressive is the insurance company providing this insurance, and that at minimum, the policy is ambiguous and should be resolved in favor of the insurer in that regard, because any average purchaser of insurance reading that declaration page would reasonably conclude that progressive insurance company is the company providing the insurance. And the second ambiguity and the key ambiguity in this case arises out of the fact that the policy does not actually track the statutory language. And the ambiguity is actually simpler, I think, than it may appear from the briefs. The ambiguity, I think, arises simply because the policy does not state if this policy and some other policy providing UIMs, if this policy provides you and there's some other similar policy, policy providing similar UIM coverage, then the anti-stacking clause applies and we're limited to the highest limit. Well, what about the language that the progressive policy contains the language all sources, not other sources, and it also refers to, quote, the one policy with the highest limit of liability, unquote. Doesn't this language track Parker more than Hahn or Johnson? But it tracks Parker more, but Parker actually uses policy more frequently. Parker uses policy in the first clause of the anti-stacking. If this policy and some other policy providing similar insurance apply, then the policy with the highest limit controls. That's Parker. That's actually the statute is a little more ambiguous because the statute says if this policy may provide if there is other similar insurance under some other policy. The ambiguity is if you refer to a policy, there's no ambiguity. You can have two policies issued from the same insurance company, and there's no question about that. And that's the distinction between this case and Parker because the Parker case, the policy provided, if this policy and some other policy, it's clearly referring to policies. The ambiguity arises regardless of whether it's other sources or all sources. The ambiguity is the sources, the language sources. Sources implies companies as opposed to policies, especially when you consider it in terms of the pro-rata clause, which refers to our share, which implies their share, which is the progressive share versus some other company's share of the coverage. So we have, that's where the pro-rata clause reinforces the ambiguity that appears in the excess clause or the anti-stacking clause by using other sources or all sources. The sources is the key word there. If it said policies instead of sources, there would be no ambiguity. And that's what the statute provides for, other policies providing similar insurance. That's what Parker provided for, other policies providing similar insurance. That's the difference between, that's why this case is more similar to Hahn and Johnson because there they were talking about other sources of coverage, other sources of UIM coverage. And that actually distinguishes. It doesn't say other sources. It says all sources. The total amount of underinsured benefits recovery, recoverable from all sources. But it's the word sources. If it was all other policies, there would be no ambiguity. But when you talk about sources and then when it refers to our share and their share and the pro-rata clause, and they're both in the same paragraph, one right after the other, it's that our versus them. It's us versus them. Sources can imply, reasonably be read to mean other insurance companies. And then you would have, I mean, you could reasonably read it in that if this company and it's a company for sources, if there are other companies providing UIM coverage instead of, from all companies providing UIM coverage, then the policy was the highest limit. That's a perfectly reasonable distinction. And there's another reason why the ambiguity is reinforced is that it should be bared in mind that in this case we have the same, we have the insured has paid premiums for both policies. Has paid premiums in full for two UIM coverages. And Justice Mosk in the Wagner case, which was cited by them in their reply brief, I think says it much more eloquently than I'll ever be able to. So you're sort of, you're saying, hey, we paid separate premiums on all of these, so why, you know, why because we do that should we be denied benefits? We should, yeah. We pay for coverage. If we paid for one, we're getting the same as if we only paid for one, but we paid for two. Right, exactly. That's inherent in an anti-stacking statute. I mean, it's just, presumably companies calculate their premiums knowing that there's an anti-stacking statute. It is inherent in an anti-stacking statute, but it's not necessarily inherent in this anti-stacking clause. In other words, Washington law is clear that you can have anti-stacking. They could do that. They could do precisely that and say that, you know, even though you paid for a million dollars' worth of coverage, we're only going to give you $500,000. I mean, I agree with what seems to be the unfairness of that, but it seems to me it's written right into the statute. Yes. Your Honor is right in that the statute, under the statute, if their language had followed the statute, if their language had said if this policy and some other policy providing similar insurance apply, then the limit is the total of all policies, and that's what we're doing. Even though two premiums were paid. Yeah. Even with two premiums, that's an unambiguous provision. Washington law allows it that you would have only $500,000 of coverage. But the question is, is this clause unambiguous in that regard? And this clause is not unambiguous in that regard because it doesn't refer to this policy and other policies. It refers to sources of coverage. And then when you have the prorata clause saying our share and their share, and then when you have the fact that these are all elements to be considered and whether or not it's ambiguous, and, you know, by a reading by an average purchaser of insurance. And when you have, you know, that prorata clause coupled with the fact they paid premiums, I mean, is it reasonable for an insurer in that situation, the average purchaser of insurance, to say, no, wait a second, that only applies if there's some other policy out there. If there's some other company providing a policy providing UAM coverage. Because I haven't paid for that. And, you know, that's reasonable. I can understand that. But I'm looking at what I have paid for, and I'm looking at this particular policy language. And it says sources of coverage. And it says our share and their share. Am I reasonable in concluding that sources means companies? Sources does not mean policies. They don't say policy. But they say policy, so obviously I'm being unreasonable in saying that it still means companies. And that's the distinction between this case and all the cases that appellants have cited to. And Justice Amosk in the dissent in the Wagner case pointed out that UAM coverage is not tied to a particular insurer. It's not tied to a particular vehicle. I thought you said that's a dissent, right? Yes. A dissent in the case they cited. And I think the dissent in the case they cited is the case itself, I think, is irrelevant to other cases. It has to be checked, though. We can't follow dissents. You can't follow dissents, but what I'm arguing is that it points out more eloquently than I what the ambiguity is. Because that case is actually irrelevant regardless because it was whether or not it applies, whether or not the California statute, which is different, it doesn't talk in terms of policies. It actually talks in terms of coverages. And even the majority in that case said the statute is a little more ponderous than it need be. So, but they weren't even considering whether the policy was ambiguous or not. I mean, they cursorily discussed it in the outset saying, well, the insurer says make some gobbledygook argument that the policy is ambiguous, but the policy tracks the statutory language. So we're just going to address that argument in terms of whether or not the statute applies in this situation, the situation being when you've got two companies providing the same coverage. And or two companies providing two. I mean, one company providing two policies. Excuse me. We're going to look in that situation, does the statute apply? That was the issue. And then the issue in Wagner was, well, there are two questions or two reasons why it shouldn't apply in this case. One is it's unfair because the insurer is paid for two policies, two premiums for two policies. And the other is that the reasonable expectations in light of the Pro Rata clause are not that there's an us and a there. It's that, you know, we're just going to arithmetically do what was done in this case, take 250,000 from one policy and 250. We can still pro-rate even though there's one insurance company. That was the majority. The dissent said, well, on the first and the firsthand, and these are reasons for why it's reasonable to read it in the sense that we are arguing makes it ambiguous in the sense that with regard to the first argument that you've got two premiums it's unfair. The insurance company has already calculated the fact that you could have multiple accidents involving uninsured motorists because the coverage is not limited to one vehicle. The coverage is not limited to the name insurer. You've got multiple insurers involved with multiple vehicles or even pedestrians. They've already calculated in their premium the fact that you could have multiple accidents involving multiple uninsured motorists. And so they've already calculated in both premiums for that. They're getting the premium for the liability, the risk that they have assumed. And the second argument was with regard to the pro-rata provision was that, well, you know, we can still pro-rate even though there's only one company involved. And Justice Moss was saying that, well, that doesn't make sense. These UIM statutes are not enacted to protect insurance companies. The idea was that, you know, you want to try and prevent litigation for the pro-rata clause so that you're not fighting about who pays what for the coverage. But they're not intending to protect the insurance company as far as being able to extend less coverage than it's actually receiving money for. Essentially, that's the bottom line here. You can do that in Washington. You can provide in Washington for an anti-stacking clause if you do so unambiguously. And you can do so unambiguously if your policy refers, and this is the Parker case, if your policy refers to other policies providing similar insurance. There's nothing ambiguous about that in terms of whether or not there's one policy or two policies or three policies providing uninsured motorist coverage. But where the policy provides, and this is the Holland & Johnson case, and where the policy provides that there's other or all, the operative word is not the other or all or any. The operative word is sources. The anti-stacking clause starts out with the word sources of UIM coverage, not policies providing UIM coverage. That's where the ambiguity arises. Sources can mean policies. It can also mean companies. A company is a source of UIM coverage. A policy is a source of UIM coverage. Both interpretations are reasonable. Nothing makes that interpretation unreasonable when you go on, in fact, and read the rest of the policy. The prorata clause, in fact, reinforces that interpretation because it talks in terms of us, our share and their share, progressive share and state farm share or some other company share. I mean, it's a reasonable interpretation of that. That interpretation becomes more reasonable when you consider the fact that the insurance company has already calculated into its premiums the risk, which Justice Moss was saying was probably about the kin to being hit by Halley's Comet of multiple accidents involving uninsured motorists at the same time. But they've already calculated that risk in charging a premium for both policies because the policies apply irrespective of, you know, they're not limited to one car or one insured. So that risk is there even under one policy. So that risk is already taken into account. What they're reasonably, according to Justice Moss and what I would submit, what the insurance company is reasonably contemplating is if they receive two premiums for two underinsured motorist coverages, that they will pay out to the limits of both coverages if the damages justify that payout. The insurance company can unambiguously get out of that reasonable assumption by clearly stating so in the policy. In this case, the insurance company did not do so. The insurance company's policy language is ambiguous in that regard. It doesn't track the statute. And therefore, because they have not unambiguously provided for anti-stacking in the situation where you have two insurers issuing two, I mean one insurer issuing the two policies, then it is ambiguous in that situation and therefore should be construed in favor of the insurer and in favor of coverage, full coverage under both policies. All right. Thank you for your argument. The first issue that Mr. Wagner addressed just briefly was the, whether there's an ambiguity about how to read the company. And I think we've pretty well flogged that. But I would just point out again that if one goes through the exercise of diligently trying to find the company that issued the insurance and you look for that, you have the company's name there. It's the only use of the word company. I don't think it can be misconstrued. You're not – I don't think a reasonable person is entitled to overlook that. I think you have to see if it's there, and it is there. And I think that's a very simple point. If we do go on to the next step and we treat this as though there was – there were one company, the major argument we heard is that the word sources is ambiguous and it does not track the statute. We talked about that as well. First of all, the cases that used – that were concerned about the word sources, we're talking about other sources, first of all, not all sources, other sources, and we're comparing it with insurance policies issued by us. So they're making the distinction between policies issued by that company and other sources. This does not do that. I would also point out if you take a look at the statute, the statute doesn't use the word policy religiously. Do I wish that the company had used the word policies? I kind of do because then Mr. Wagner wouldn't have had anything to say. But our language is rich in – in synonyms, and there's nothing that says you have to use the word policies. If you look at the statute, it said – says that the injured person has other similar insurance available to him under other policies. There's policy use. The total limits of liability of all coverages, the very same word that's used in the progressive policy. There's nothing that demands that you use the word policy. It – it can be used, but you can also express it as coverages, and you can express it as underinsured benefits from all sources. And it's nothing unclear about that simply because the word policy is not being used. There was an argument talking about how there were two premiums, and therefore, there should be two limits. And of course, Judge Canby pointed out the obvious, which is whenever you have two policies with underinsured modus benefits, there will be two premiums. And if the anti-stacking clause is to apply, it will apply in the circumstance where there are two premiums. Mr. Wagner demonstrated extraordinary actuarial acumen today in talking about how you compute premiums. I don't know that that's true, and it's certainly not in the record. I expect that the premiums are computed on the basis of the anti-stacking language as well, but I don't know that at all. Certainly. It probably doesn't make much difference. The amount of premium between $250,000 and $500,000 is probably very small. I think that's right. UIM premium is surprisingly small, to my mind at least, so I've noticed. His argument sort of branched over into a reasonable expectations argument. And Washington does not recognize reasonable expectations. That is, Washington requires that insured read the policy, and it will reward the reasonable expectations in regard to the policy language. And it will enforce that policy language as an ordinary consumer would understand it, but it doesn't reward reasonable expectations based upon things that are not in the policy, which some courts do, including Nevada and Connecticut, that were cited by opposing side in their brief. And that's all I had to say. I would ask that the Court reverse and order that summary judgment be ordered in favor of Progressive. All right. There don't appear to be additional questions. Thank you both for your argument in this matter, and the matter will stand submitted.
judges: Canby, Tashima, Callahan